**CENTRAL BUCKS SCHOOL DISTRICT, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (BELZ), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 13, 2002.

Decided May 21, 2003.

James R. Flandreau, Media, for petitioner.

Annabelle R. Cedar, Philadelphia, for respondent.

Before: COLINS, President Judge, and SMITH–RIBNER, Judge, and COHN, Judge.

OPINION BY Judge COHN.

This is an appeal by Central Bucks School District (Employer) from an order of the Workers' Compensation Appeal Board (Board) that reversed the decision of a Workers' Compensation Judge (WCJ) to deny a petition to reinstate benefits and a petition to review a benefit miscalculation filed by Jeanette Belz (Claimant).

The following background is pertinent. On May 13, 1998, Claimant suffered a work-related cervical strain and myofascial syndrome. On September 9, 1998, Employer filed a notice of compensation payable recognizing an average weekly wage of $1,288.04. On November 13, 1998, Claimant returned to work half days and by virtue of a supplemental agreement,

Claimant's total disability payments were reduced to partial. Because of the provisions of the relevant collective bargaining agreement, on January 11, 1999, she began being receiving what amounted to her full-time salary and this continued through June 16, 1999.[1] Therefore, when she received workers' compensation checks, she signed them over to Employer. But, even though she received a salary check in June 1999, which included payment for both July and August, she did **not** sign her July and August workers' compensation benefits over to Employer.

On December 13, 1998, Employer filed a suspension/termination petition alleging that her work-related injury no longer prevented her from performing her job. That petition was denied by the WCJ on November 30, 1999. In the meantime, on April 30, 1999, Claimant requested a medical sabbatical for the 1999–2000 school year, which was granted on July 27, 1999. (N.T., Hearing of September 12, 2000, p. 7.) Claimant testified that the genesis of her decision to seek the sabbatical was conversations with her school principal and other district personnel who caused Claimant to conclude that part-time work would not be made available to her during the 1999–2000 school year. Her sabbatical became effective in September of 1999. While on sabbatical, Claimant received one-half of her annual salary for the 1999–2000 school year.

On March 21, 2000, Claimant filed a petition to reinstate benefits, seeking to increase her partial benefits to total, relating back to the beginning of her sabbatical, September of 1999. She also filed a petition to review, alleging that her benefit rate had been miscalculated. On December 29, 2000, the WCJ denied both the reinstatement and review petitions. His basis for doing so was that Claimant had produced no evidence that anyone, on behalf of Employer, had indicated "explicitly" that no part-time work would be available as of September 1999 and, further, that she had produced no proof that she would be capable of only part-time work in the fall of the 1999–2000 school year. As stated by the WCJ, "the claimant's own testimony establishes that she assumed in April of 1999 that she would be incapable of more than part-time employment five months hence in September of 1999 and she assumed that part-time employment would not be available to her." (Finding of Fact 5.) The WCJ further reasoned that, because Claimant requested and was granted a medical sabbatical, there was no reason for Employer to offer a specific classroom assignment for the 1999–2000 school year. He, thus, opined that Claimant's wages were reduced from full-time to half-time, not as a result of the work injury, but as a result of her decision to request a medical sabbatical. Therefore, he concluded that Employer was entitled to a credit for partial disability payments made after Claimant had requested and was granted a medical sabbatical. He also concluded that Employer was entitled to a credit for all compensation paid during July and August of 1999.

■ On June 25, 2002, the WCJ amended his decision concerning a credit issue.[2]

---

1. These payments were agreed upon, pursuant to a stipulation entered into by the parties on October 24, 2000, and adopted by the WCJ in his December 29, 2000 adjudication.

2. In the context of a petition for reinstatement and penalty filed by Claimant, the WCJ noted that his earlier order had been ambiguous regarding credit. He determined that the Employer's credit had been exhausted and also concluded that, regarding her sabbatical, Claimant was entitled to receive both her part-time pay and part-time disability benefits relying on *Panaci v. Workmen's Compensation Appeal Board (Scranton School District)*, 66

On August 26, 2002, the Board reversed the December 29, 2000 order. In so doing, it agreed with Claimant that there was not substantial competent evidence to support the finding that she voluntarily withdrew from the work force when she took a medical sabbatical.[3] It noted that the WCJ had accepted her testimony that she worked on a part-time basis for the 1998–1999 school year because her work-related injury prevented her from working full-time. He had also accepted Claimant's testimony that she was pressured by Employer to return to full-time work in January 1999, and that her school principal had told her in April, 1999, that "you can't continue this way." He also credited Claimant's testimony that she understood this statement to mean part-time work would not be available for the 1999–2000 school year and that she applied for and received a medical sabbatical. The Board concluded that this was relevant evidence that a reasonable person might accept in making a finding that Claimant left her job to take a medical sabbatical because her work-related disability prevented her from working on a full-time basis and a part-time job was not available. The Board further noted that, in requiring Claimant to prove that Employer did not explicitly tell her part-time work would be unavailable, the WCJ im-

properly placed the burden on Claimant to prove work would not be available, when the burden in a reinstatement petition only required she prove that she left her job due to her disability. On this basis, it reversed the denial of the reinstatement petition. Employer appealed to this Court.[4]

On appeal, regarding the reinstatement petition, Employer argues that Claimant did not show that she applied for the sabbatical due to her work-related injury rather than a non-work-related fibromyalgia condition, and further asserts that Claimant unreasonably concluded that she would not be permitted to work part-time beginning in September, 1999. Regarding the review petition, Employer argues that it is entitled to a credit for moneys overpaid; Claimant asserts Employer must request the money from the supersedeas fund instead.[5]

■■■ We first consider the issues pertaining to the reinstatement petition. Claimant characterizes this as a petition to **reinstate** benefits.[6] She is seeking to increase her benefits on the theory that her earning capacity has been adversely affected by her disability because the partial, *i.e.*, light duty, work was no longer available. As such, the case is governed by the

Pa.Cmwlth.188, 443 A.2d 881 (1982). This issue is not challenged on appeal.

3. The Board relied on *York Terrace/Beverly Enterprises v. Workmen's Compensation Appeal Board (Lucas)*, 140 Pa.Cmwlth.75, 591 A.2d 762, 764 n.5 (1991), for the notion that substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.

4. Our scope of review where, as here, only one party presented evidence, is limited to whether the findings of fact are supported by substantial evidence and whether there has been any constitutional violation or legal error. *See Russell v. Workmen's Compensation*

*Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth.436, 550 A.2d 1364 (1988); Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

5. We note at the outset that Employer never filed a petition seeking credit but, rather, the question arose in the context of Claimant's petition to review.

6. Strictly speaking, her benefits were not suspended or terminated, but merely reduced from full to partial. However, since the parties, the WCJ and the Board, without objection, all considered this to be a reinstatement petition rather than a modification petition, we also consider it as such.

general principles of *Pieper v. Ametek–Thermox Instruments Division*, 526 Pa. 25, 584 A.2d 301 (1990), and *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987). Claimant, thus, needed only to show that, while her disability has continued, the loss of earnings has recurred. *Pieper*, 526 Pa. at 33, 584 A.2d at 304. In such a situation, "the causal connection between the original work-related injury and the disability which gave rise to compensation is *presumed*." *Id.* at 33, 584 A.2d at 305 (emphasis in original). Therefore, Claimant here needed only to prove that, through no fault of her own, her earning power was again adversely affected by her disability and that "the disability which gave rise to [the] original claim, in fact, continues." *Id.* at 34, 584 A.2d at 305. She need not reprove that her disability resulted from a work-related injury during her initial employment, but only that it is the same disability that the law presumes occurred during her original employment. *Id.* To meet this burden, she needed to testify only that her prior work-related injury continued. *Latta v. Workmen's Compensation Appeal Board (Latrobe Die Casting Co.)*, 537 Pa. 223, 642 A.2d 1083 (1994). She is not required to submit a medical expert to prove this point. *Id.*

In this case, the import of Claimant's testimony was that her work-related injury prevented her from returning to full-time work and that she reasonably believed, based on statements made by school district personnel, that she would not be permitted to continue in her part-time status. This was the equivalent of her testifying that Employer communicated to her that it was withdrawing the light-duty work. Of particular importance is the fact that Employer did not present contrary evidence, even when the WCJ suggested to Employer that it provide the testimony of the principal, Ms. Tomlinson, to clarify what she meant by her statements to Claimant.[7] Further, Employer presented no evidence that Claimant's fibromyalgia, or any other non-work-related medical condition, was the basis for Claimant's medical sabbatical.[8]

■ In his adjudication, the WCJ did not find Claimant's testimony incredible but, rather, legally insufficient. This is because, as previously noted, Claimant had produced no proof that anyone on behalf of Employer had indicated "explicitly" that no part-time work would be available as of September 1999, or that she would be incapable of other than part-time work in the fall of the 1999–2000 school year. The Board was correct that, under *Pieper*, Claimant met the burden and did not need to present medical evidence. Consequently, the burden under *Kachinski* then shifted to Employer to show job availability. As was stated in that case:

---

7. At the hearing on June 6, 2000, the WCJ stated to counsel for Employer, "If Claimant misunderstood the meaning of [Ms. Tomlinson's] remark, Mr. Flandreau, can you get some clarification as to whether the circumstances that Claimant worked under in the past year will be available next year?" (N.T. 13). Counsel replied, "I am going to attempt to do that, Your Honor. Certainly it was obviated for the '99–2000 year because of the Claimant [sic] choice for a medical sabbatical. Whether it would exist for 2000–2001 I do not

know as we sit here. I will go back and find out what the possibility is." *Id.*

8. In its brief, Employer relies on a discussion of non-work-related fibromyalgia, appearing in the adjudication attendant to the previously filed unsuccessful petition to terminate/suspend. In that adjudication, the WCJ found the fibromyalgia was not work-related. That decision does not address the reason for the medical sabbatical, and Employer did not present any evidence of Claimant's medical condition before the WCJ.

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, *e.g.*, light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue.

*Kachinski,* 516 Pa. at 252, 532 A.2d at 380.

Employer did not present any evidence that a light-duty job would be available to Claimant in the fall of 1999. To the contrary, it acted as though none would. First, Employer's principal told Claimant that she "could not continue this way," a statement Employer never clarified by bringing in the principal who made it, despite an invitation by the WCJ to do so. Claimant also testified that it was the principal who suggested to Claimant that she should consider a medical sabbatical. (N.T., Hearing of September 12, 2000, p. 5.) Then, when Claimant applied for the sabbatical, the school board granted it. Thus, Employer did not meet its burden under *Kachinski*.[9]

■ We now move to a consideration of the petition to review. There appears to be no question that Claimant received both her full salary and her worker's compensation benefits for July and August of 1999. The question we are asked to decide is whether Employer is entitled to a **credit** for this, as it asserts, or whether it must obtain relief from the supersedeas fund, as Claimant asserts.[10]

We conclude that this issue is not properly before us. The WCJ, in Conclusion of Law No. 4 of his December 29, 2000 adjudication, stated, "The employer is entitled to a credit in the amount of $266.42 for every week of compensation paid during the months of July and August 1999" and reiterated in his order that "employer is entitled to a credit." Although Claimant appealed the December 29, 2000 order to the Board, reference to the appeal document discloses that she did **not** specify that she was appealing this July/August credit issue. Not surprisingly, therefore, since there is no indication that the issue was before it, the Board did not address this issue in its opinion. The parties apparently interpreted the Board's order, which reversed on other issues (and granted a credit on an issue not relevant here), to mean that *sub silencio* the Board had also reversed the WCJ's grant of the July/August credit. This is not legally correct. The Board could not rule on an issue not before it. Hence, the WCJ's directive that Employer is entitled to credit for July/August payments stands. The correctness of that ruling, not having been made an issue before the Board, is, therefore, not before us for review either.[11]

---

9. The WCJ correctly noted in an amended order, dated June 25, 2002, that under Section 1166 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S, § 11–1166, Claimant was entitled to collect sabbatical leave pay and workers' compensation benefits simultaneously.

10. The Board, by order dated October 11, 2002, granted a supersedeas pending appeal to this Court regarding the July and August 1999 payments.

11. We cannot help but note that, had Employer filed a petition for credit squarely raising this issue, this whole procedural quandary could have been avoided.

Accordingly, based on the foregoing discussion, the order of the Board is affirmed.

### ORDER

**NOW,** May 21, 2003, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.