IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Elena Horan,                                :
            Petitioner         :
                                 :
         v.                     :
                                 :
Workers' Compensation Appeal    :
Board (Phoebe Home),          :   No. 1868 C.D. 2014
            Respondent     :   Submitted: January 30, 2015

BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE McGINLEY                FILED: August 3, 2015

Elena Horan (Claimant) petitions for review from an order of the Workers' Compensation Appeal Board (Board) that affirmed the Workers' Compensation Judge's (WCJ) denial of Claimant's petition to reinstate compensation benefits.

On August 22, 2012, Claimant petitioned to reinstate compensation benefits and alleged that she was "no longer disabled by her non-work-related injuries and continues to be disabled by her work-related injuries." Petition to Reinstate Compensation Benefits, August 22, 2012, at 2; Reproduced Record (R.R.) at 4a. On September 4, 2012, Phoebe Home (Employer) filed an answer and denied all material allegations. Answer to Petition to Reinstate Compensation Benefits, September 4, 2012, at 1; R.R. at 7a.

Claimant testified that she was injured at work when she fell on her knee and developed chronic regional pain syndrome (CRPS). Hearing Transcript (H.T.), October 17, 2012, at 9; R.R. at 384a. Claimant said that she is unable to perform her pre-injury job "[b]ecause I can hardly walk . . . I am in such pain . . . from the CRPS" and that she is unable to perform her modified light-duty job "[b]ecause I can't sit very long . . . if I sit too long, I have pain . . . I have pain all the time." H.T. at 11-12; R.R. at 386a-87a. Claimant stated that "I'm taking Vicodin" for the CRPS but that her doctor wants to "put in a stimulator . . . box." H.T. 19; R.R. at 394a. Claimant concluded that she also suffers from depression as a result of her CRPS. H.T. at 19; R.R. at 394a.

Claimant continued that her modified-duty job required that: "I had to fold big sheets . . . I had to stand up . . . [t]hey're too big to sit and fold"; I'd have to take the clothes that I folded and I would have to walk them over to another table"; "I'd have to go to the [dryer], I'd have to take out one piece of clothing at a time"; "[s]ometimes it would've been maybe 20 minutes to 40 minutes . . . to take the items out of the dryer and place them in the bin . . ."; "I had to take the dresses and hang them up on hangers and hang them on a rack"; and "I'd have to walk to the lunchroom . . . [j]ust walking into the building was a long walk." H.T. at 28-30; R.R. at 339a-41a.

Claimant introduced the medical deposition of Scott Naftulin, D.O. (Dr. Naftulin), board-certified in physical medicine and rehabilitation. Dr. Naftulin testified:

> When I initially saw her [Claimant], she was being treated for cervical spine sprain/strain injury for whiplash, lumbar sprain/strain injury, post-concussive syndrome, and headache. Other diagnosis that were

2

> treated over time and into 2010, 2011 included CRSP . . .
> Type I, of the right lower extremity, a right L4 and S1
> radiculopathy, which had been diagnosed by EMG by Dr.
> Gould, history of a right knee surgery after a work injury,
> as well as the diagnoses I've already described.

Deposition of Dr. Scott Naftulin (Dr. Naftulin Deposition), February 26, 2013, at 7; R.R. at 103a. Dr. Naftulin stated that "[s]ubsequent to January, 2011, it appears that the treatment was really directed at the complex regional pain syndrome including the Lidoderm patches, the oral medication, Keppra, an anticonvulsant used for neuropathic pain, and consideration for spinal cord stimulator trial and implant." Dr. Naftulin Deposition at 11; R.R. at 107a. Dr. Naftulin stated that Claimant's medical condition "appears to have worsened to some degree in that the analgesics used to treat it, the medications have been increased from when she initially presented here . . . [b]ut certainly it hasn't improved." (Emphasis added.) Dr. Naftulin Deposition at 14; R.R. at 110a.

> Dr. Naftulin opined:
>
> So I don't think she could do standing or walking for a
> cumulative third of the day . . . [b]ut based upon, again,
> her condition and her reported abilities and my
> knowledge of treating her, it's my feeling she would have
> to be in a sedentary position for essentially throughout
> the workday. (Emphasis added.)

Dr. Naftulin Deposition at 15; R.R. at 111a. Dr. Naftulin concluded that "[a]t least by October 19, 2011, the CRSP, right lower extremity, was the sole reason for her physical disability." Dr. Naftulin Deposition at 18; R.R. at 114a.

Karen Rozak (Rozak), the occupational health and safety coordinator for Employer, testified that Claimant "was never asked to fold sheets, put laundry

in dryers, take laundry out of dryers, to stand for any length of time to perform specific tasks . . . [t]hose were never asked of her." Deposition of Karen Rozak (Rozak Deposition), October 5, 2010, at 8; R.R. at 208a. Rozak continued that when "I talk about self-modification, it's that we didn't make her sit for a specific amount of time or stand. She could self-modify in that she could change what she was doing, she could change her position, whatever was her position of comfort." Rozak Deposition at 9-10; R.R. at 209a-10a. Finally, Rozak concluded that Claimant "was not required to lift . . . [w]ork was to be brought to her." Rozak Deposition at 10; R.R. at 210a. (Emphasis added.)

Karen Rex (Rex), director of housekeeping and laundry, testified that Claimant "[a]s a modified worker she was required to sit and fold, and basically that was it." Deposition of Karen Rex (Rex Deposition), October 5, 2010, at 6; R.R. at 240a. Rex continued that "[a] lot of the statements that Elena [Claimant] . . . was doing in the laundry . . . was not required of her . . . [i]t was done at her own choosing." Rex Deposition at 8; R.R. at 242a. Rex stated that Claimant was never asked to fold sheets. Rex Deposition at 11; R.R. at 245a. "[W]e would give her personal clothing to fold, washcloths, bibs, smaller items." Rex Deposition at 11; R.R. at 245a.

Employer also introduced the medical deposition of Gregory H. Pharo, D.O. (Dr. Pharo), board-certified in anesthesiology with a sub-certification in pain medicine. Dr. Pharo first examined Claimant on December 7, 2012, and Claimant provided him with a medical history which included the details of her work-related injury. Deposition of Dr. Gregory H. Pharo (Dr. Pharo Deposition), April 5, 2013, at 7-8; R.R. at 317a-18a. Dr. Pharo's medical examination revealed:

4

. . . When she walked, she didn't seem to have any significant gait abnormality, except for in relationship to the knee. She did not flex or completely extend her right leg and dragged that. The knee, when I examined it . . . [s]he was able to flex it 105 degrees and extend it within 10 degrees of complete extension. She has hypersensitivity, or allodynia[1], of the knee, superior and proximal to the calf. The lateral aspect of the calf was shiny with some soft tissue edema . . . . The capillary refill was normal in both extremities. In the upper extremities, it was a little bit longer, which I thought was kind of interesting. The right leg seemed warm - - seemed equal in strength.

Dr. Pharo Deposition at 11-12; R.R. at 321a-22a. Dr. Pharo opined that "I agreed and thought she had CRPS Type I, and I thought she was able to perform the duties she previously was able to perform." (Emphasis added.) Dr. Pharo Deposition at 16; R.R. at 326a.

The WCJ made the following pertinent findings of fact:

**Findings Of Fact**

**A. Litigation**

1. Defendant [Employer] acknowledged responsibility for claimant's July 30, 2006 work injury . . . . Defendant [Employer] described the injury as, 'Right Knee Prepatellar Bursitis.' Thereafter, claimant's disability status was altered by the issuance of a Notice of Suspension and by the filing of a Supplemental Agreement, suspending claimant's benefits as of September 2, 2007 . . . . (Emphasis added.)

---

[1] "Allodynia is a painful sensation to a non-painful stimulus such as light touch, stroking, sheets touching it." Dr. Pharo Deposition at 12; R.R. at 322a.

5

2. On September 29, 2008, claimant filed a Petition to Review Compensation Benefits. At a hearing on November 10, 2008, the parties entered into a Stipulation on the record, wherein defendant [Employer] acknowledged responsibility for claimant's chronic regional pain syndrome (CRPS) or RDS of the right lower extremity. Claimant's Petition to Review Compensation Benefits was granted based upon the oral stipulation . . . . (Emphasis added.)

3. On February 26, 2009, claimant filed a Reinstatement Petition seeking reinstatement as of November 30, 2008. She amended the petition to seek reinstatement as of April 21, 2009. In an Order circulated by the Bureau on November 30, 2009, Judge Bruce K. Doman denied claimant's Reinstatement Petition . . . . Judge Doman specifically noted that claimant was involved in a motor vehicle accident on June 6, 2008, and that she remained out of work ever since the motor vehicle accident. Since the motor vehicle accident, claimant collected long and short term disability benefits and filed a civil complaint alleging numerous injuries . . . . During that litigation, claimant treated with Dr. Naftulin through July 29, 2009. Judge Doman found Dr. Naftulin's opinion that claimant was disabled as a result of the motor vehicle accident credible and persuasive . . . . Based upon the credible evidence, Judge Doman concluded that claimant failed to demonstrate that her total disability from the work-related motor vehicle accident had ended. Consequently, he denied claimant's Reinstatement Petition. (Emphasis added.)

4. Approximately three months after . . . claimant again filed a Reinstatement Petition, which was again assigned to Judge Doman. During the litigation on this petition, claimant acknowledged that she continued to treat for the motor vehicle accident of June 6, 2008 and that she continued to receive long term disability benefits as a result of that accident, with a second lawsuit pending . . . . After a careful review of claimant's testimony and the

6

medical evidence, Judge Doman concluded that claimant failed to offer credible evidence that she was no longer disabled by the two motor vehicle accidents and that her CRPS had worsened and was now disabling. Consequently, he once again denied claimant's Reinstatement Petition . . . . (Emphasis added.)

5. Claimant appealed Judge Doman's . . . decision to the . . . WCAB, who affirmed the decision . . . . Claimant then took an appeal from the decision of the WCAB to the Commonwealth Court. The Commonwealth Court affirmed the decision of the WCAB . . . . (Emphasis added.)

## B. Current Litigation

6. Several days after the Commonwealth Court's decision on August 22, 2012, claimant filed the current Reinstatement Petition. (Emphasis added.)

7. As noted in the Commonwealth Court's decision, claimant bears the burden of proving a change in her work related physical condition, such that the reasons for the September 2007 suspension no longer exist. (Emphasis added.)
. . . .
11. Defendant [Employer] submitted into evidence the deposition testimony of Karen Rozak, Karen Rex and the deposition testimony of claimant from September 15, 2010. However, because there is no evidence that any job was available to claimant in this litigation, this testimony is irrelevant and will not be summarized in this decision. Exhibits D-5, D-6 and D-7. (Emphasis added.)

12. Claimant testified at two hearings, one on October 17, 2012, and one on January 23, 2013. Claimant does not believe she can perform her pre-injury job because she can hardly walk as a result of the CRPS. Likewise, she does not believe she can perform the light-duty job

7

because of her pain (Hrg. 10/17/12 N.T. 17-18) . . . . According to claimant, her CRPS has worsened since 2008. She has constant cramping in the back of her leg, and is unable to sit, stand or walk for long periods of time. Claimant believes she is entirely unable to work (Hrg. 1/23/13 N.T. 26-27, 31). Claimant settled the lawsuit involving her September 2, 2009 motor vehicle accident . . . . (Emphasis added.)

13. . . . Dr. Naftulin has been treating claimant since July 2008. [Dr. Naftulin] believes claimant is physically capable of performing sedentary work (N.T. 15) . . . . He believes claimant's CRPS is the substantial and contributing cause of her disability as of January 1, 2011 (N.T. 19-20). The doctor acknowledged that he did not examine claimant on January 1, 2011. He also acknowledged that at the January 25, 2011 visit, claimant's chief complaint was for a follow-up of low back and right leg pain (N.T. 23-24) . . . . The doctor acknowledged that through February 18, 2013, his physical exam findings were the same and there was no dramatic change to claimant's pain complaints (N.T. 33-37). Nevertheless, he agreed that the general trajectory of claimant's symptoms has worsened (N.T. 41). (Emphasis in original and added.)

14. . . . He [Dr. Pharo] acknowledged that claimant has CRPS of the right lower extremity, which occurred after her patellofemoral contusion and the repair of her meniscus. He opined claimant can return to work in a sedentary position with the ability to change position (N.T. 15). He did not believe claimant has any limitations other than those for her CRPS (N.T. 32). (Emphasis added.)

15. Dr. Naftulin's opinion that claimant's non-work-related motor vehicle accident injuries were no longer contributing to her disability as of January 1, 2011 or October 19, 2011 is entirely lacking in credibility . . . . Through Dr. Pharo's credible testimony, however,

8

claimant has proven that, as of December 7, 2012, her non-work-related conditions were no longer disabling. (Emphasis added.)

16. Dr. Naftulin's opinion that claimant's work-related CRPS of the right lower extremity has worsened is entirely lacking credibility . . . . Both Dr. Naftulin and Dr. Pharo are credible in their opinions that claimant remains physically capable of performing sedentary work. (Emphasis added.)

17. Based upon my observation of her, claimant's testimony that her CRPS has worsened such that she is incapable of performing sedentary work or work of any kind lacks credibility. In this regard, claimant's testimony contradicts that of her treating physician. Claimant's testimony that she no longer treated for her back as of 2010 also lacks credibility in light of Dr. Naftulin's testimony. (Emphasis added.)

WCJ's Decision, June 20, 2013, Findings of Fact (F.F.) Nos. 1-7 and 11-17 at 2-5.

The WCJ denied and dismissed Claimant's reinstatement petition.

The Board denied Claimant's appeal and concluded:

After careful review, we determine the WCJ did not err in denying Claimant's Reinstatement Petition. It was Claimant's burden to establish both that her non-work related injury was no longer disabling and that her work injury is now causing her loss of earning power . . . . Claimant succeeded in establishing her non-work-injury resolved but failed to prove her work injury was causing her loss of earnings. The certified medical evidence established Claimant is in the same position she was in immediately prior to going out of work for her non-work-related injuries. At that time, Claimant was working modified-duty with no loss of wages. Because the WCJ rejected Claimant's testimony, she is without evidence establishing she is incapable of working due to her work

9

injury. Claimant needed to prove the reason for her suspension no longer existed . . . . <u>Claimant's suspension was due to her ability to work the modified position.</u> Therefore, <u>Claimant failed to prove her work-injury was causing her loss of earnings.</u> (Citations omitted and emphasis added.)

Board Opinion, October 6, 2014, at 4-5.


## I. Did Claimant Satisfy Her Burden For A Reinstatement Of Benefits?

Initially, Claimant contends[2] the WCJ erred when she found "[C]laimant failed her burden by not proving that her condition had worsened so that she could not perform her 2007 modified duty job." Brief for Petitioner at 10. Specifically, Claimant asserts that although the WCJ and Board determined Claimant "succeeded in establishing her non-work injury resolved . . . [she] failed to prove her work injury was causing her loss of earnings." Board's Opinion at 5.

Employer responds that Claimant "failed to present any medical evidence establishing a change in her condition which rendered her unable to perform her modified-duty job . . . [t]herefore, she failed to meet her burden of proof for a reinstatement of benefits." Brief of Respondent at 23.

A claimant seeking a reinstatement of benefits following a suspension of benefits must prove that, through no fault of his or her own, the (1) claimant's earning power is once again adversely affected by the disability, and (2) the

---

[2] This Court's review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. <u>Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation)</u>, 589 A.2d 291 (Pa. Cmwlth. 1991).

disability that caused the original claim continues. Pieper v. Amtek-Thomas Instruments Div. and Workmen's Compensation Appeal Board, 584 A.2d 301 (Pa. 1990). So the WCJ must determine whether the claimant established a continuation of her disability and loss of earnings. Pieper. As the burdened party, the claimant has to meet both her burden of production and burden of persuasion regarding the required elements. Osram Sylvania v. Workers' Compensation Appeal Board (Wilson), 893 A.2d 186 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 906 A.2d 545 (Pa. 2006). Further, the claimant must show that the non-work injury is no longer disabling and that the work injury is now causing the loss of earning power. Pucci v. Workers' Compensation Appeal Board (Woodville State Hospital), 707 A.2d 646, 648 (Pa. Cmwlth. 1998). Last, "[a] party seeking to alter the status quo must prove that there has been a change of physical condition or circumstances since the last legal proceeding addressing the nature and extent of the disability." Id. at 648.

Here, the WCJ rejected Dr. Naftulin's opinion that Claimant's CRPS condition of the right lower extremity had worsened based upon Dr. Naftulin's "lack of physical exam findings, diagnostic studies" and a functional capacities evaluation that would support a physical change in Claimant's medical condition. See WCJ's F.F. No. 15. The WCJ also rejected Claimant's testimony that her CRPS's condition worsened to such a degree that she was unable to perform sedentary work of any kind. See WCJ's F.F. No. 17.

To the contrary, the WCJ found Dr. Pharo's testimony credible as follows: that Claimant was able to return to work in a sedentary position that allowed her to change positions; and that Claimant, as of December 7, 2012,

11

established that she no longer was disabled from her non-work-related injuries. See WCJ's F.F. Nos. 14 and 15.

The WCJ, as the ultimate finder of fact in compensation cases, has exclusive province over questions of credibility and evidentiary weight, and is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. General Electric Co. v. Workmen's Compensation Appeal Board (Valsamaki), 593 A.2d 921 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 600 A.2d 541 (Pa. 1991). This Court will not disturb a WCJ's findings when those findings are supported by substantial evidence.[3] Nevin Trucking v. Workmen's Compensation Appeal Board (Murdock), 667 A.2d 262 (Pa. Cmwlth. 1995).

This Court is satisfied that the WCJ properly resolved this issue by accepting and rejecting the opinions of medical experts and by determining credibility and weight of evidence. Vols v. Workers' Compensation Appeal Board (Buck), 664 A.2d 703 (Pa. Cmwlth. 1995). There was no error.

## II. Was Claimant Required To Prove That Her Work-Related Condition Worsened Where A Modified Duty Job Was Found Not Available?

Claimant next argues that the WCJ found there was no job available and "[t]herefore, if the modified duty job is no longer available, the reason for the suspension is eliminated and she is in the same position she was in prior to the suspension, that is, eligible for TTD (temporary total disability) benefits." See

---

[3] Substantial evidence is relevant evidence a reasonable mind might accept as adequate to support a conclusion. Bethenergy Mines, Inc. v. Workers' Compensation Appeal Board (Skirpan), 612 A.2d 434 (Pa. 1992).

WCJ's F.F. No. 11 and the Brief for Petitioner at 6.  Claimant asserts that the non-availability of her prior modified job or the availability of a subsequent modified job established that she met her burden for reinstatement.

Employer responds that "[c]ontrary to Claimant's assertion, where the claimant is totally disabled due to a non-work-related condition, the employer is not required to establish that work is available unless the claimant's work-related restrictions increase."  Brief of Respondent at 23.

In Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.), 532 A.2d 374, 380 (Pa. 1987)[4], our Supreme Court established the following procedures governing the return to work of injured employees:

---

[4] This Court notes that Kachinski dealt with a modification petition and not a reinstatement petition as here.  However, in Central Bucks School District v. Workers' Compensation Appeal Board (Belz), 824 A.2d 387 (Pa. Cmwlth. 2003), this Court applied the Kachinski analysis to a reinstatement petition.  This Court noted:

> Strictly speaking, here benefits were not suspended or terminated, but merely reduced from full to partial.  However, since the parties, the WCJ and the Board, without objection, all considered this to be a reinstatement petition rather than a modification petition, we also consider it as such.  (Emphasis added.)

Id. at 390, n.6.   In applying the Kachinski analysis, this Court stated:

> Employer did not present any evidence that a light-duty job would be available to Claimant in the fall of 1999.  To the contrary, it acted as though none would.  First, Employer's principal told Claimant that she 'could not continue this way,' a statement Employer never clarified by bringing in the principal who made it, despite an invitation by the WCJ to do so.  Claimant also testified that it was the principal who suggested to Claimant that she should consider a medical sabbatical . . . .  Then, when Claimant applied for the sabbatical, the school board granted it.  Thus, Employer did not meet its burden under Kachinski.   (Hearing transcript and footnote omitted, and emphasis added.)

Id. at 392.

13

1. The Employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, e.g. light work, sedentary work, etc. (Emphasis added.)

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue.

In Kachinski, Our Supreme Court stressed that both parties must deal in good faith: "[t]he referrals by the employer must be tailored to the claimant's abilities . . . and be made in a good faith attempt to return the injured employee to productive employment, rather than a mere attempt to avoid paying compensation." Id. at 380. "By the same token, employees must make a good faith effort to return to the work force when they are able, and their benefits can be modified for failure to follow up on referrals . . . ." Id. at 380.

Here, the WCJ found that Claimant's previous modified job was not available and that Employer's evidence concerning Claimant's previous modified duties was "irrelevant." If there was evidence of record that Claimant's previous modified job was still available or a new job within Claimant's medical restrictions was offered to Claimant, the WCJ's finding that Claimant "remains physically capable of performing sedentary work" would be relevant. Instead, the WCJ found that Claimant was able to perform the duties of her previous modified job that no

14

longer was available.[5] Employer's failure to introduce evidence of job availability forecloses the possibility that a modified duty job offered seven years ago was still available to Claimant. As a result, the Board erred when it denied Claimant's reinstatement petition.

Accordingly, this Court must reverse the Board's order and remand for a reinstatement of Claimant's compensation benefits.

_____
BERNARD L. McGINLEY, Judge

---

[5] Employer cites Pitt Ohio Express v. Workers' Compensation Appeal Board (Wolff), 912 A.2d 206 (Pa. 2006) for the proposition that "[t]here is no requirement that the employer keep a job offer open indefinitely." Brief of Respondent at 24. However, our Pennsylvania Supreme Court stated:

> Claimant's bad faith relieved employer of the requirement to again demonstrate a continued suitable position was available. An employer cannot be given a never-ending duty to keep a job available for a claimant who rejects it in bad faith. If we allowed a claimant to reject a job in bad faith and then place a burden on the employer to provide the claimant another job whenever he chooses, we would reward bad faith conduct and circumvent the purpose of the Workers' Compensation Act. (Emphasis added.)

Id. at 209.

Unlike the factual situation in Pitt Ohio Express, here there was no finding of bad faith on the part of Claimant, and in fact, Claimant had returned to work at a modified duty job seven years prior.

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Elena Horan,                                :
                Petitioner      :
                              :
             v.                    :
                              :
Workers' Compensation Appeal    :
Board (Phoebe Home),            :   No. 1868 C.D. 2014
                Respondent     :

**O R D E R**

AND NOW, this 3rd day of August, 2015, the order of the Workers'
Compensation Appeal Board (Board) in the above-captioned matter is reversed and
the matter remanded to the Board for a reinstatement of Claimant's compensation
benefits.

Jurisdiction relinquished.

_____
BERNARD L. McGINLEY, Judge

Elena Horan,                     :

                Petitioner      :

                                  :

          v.                  :    No. 1868 C.D. 2014

                                  :    Submitted: January 30, 2015

Workers' Compensation Appeal       :

Board (Phoebe Home),             :

                Respondent    :


BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
                  HONORABLE P. KEVIN BROBSON, Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge


*OPINION NOT REPORTED*

**CONCURRING OPINION**
**BY JUDGE BROBSON**              **FILED: August 3, 2015**


       I agree with the majority's decision to reverse the order of the Workers' Compensation Appeal Board (Board) and remand this matter for a reinstatement of Claimant's benefits. I write separately because my approach differs from the majority.

       This is the third reinstatement petition that Elena Horan (Claimant) has filed. Our unreported panel decision on her second reinstatement petition includes a concise summary of the history of Claimant's disability status:

>        Claimant suffered a work-related injury described as right knee pre-patellar bursitis in a Notice of Compensation Payable issued by Phoebe Home (Employer) on December 13, 2006. Subsequently, pursuant to a Notice of Suspension, Claimant's benefits were suspended as of February 27, 2007, when she returned to work with no loss of earnings. A Supplemental Agreement was later executed indicating that Claimant suffered partial loss of earnings as of her

return to work on that date, thus entitling her to partial disability benefits until March 4, 2007, when she no longer has a loss of earnings. Her total disability benefits were reinstated on two subsequent occasions, namely from March 23 to March 24, 2007, and from May 24 through August 26, 2007. Claimant returned to work in a modified position on August 27, 2007, without a loss of earnings, and her benefits were once again suspended on September 2, 2007. Claimant then filed a Petition to Review Compensation Benefits, which was granted by the WCJ pursuant to a stipulation of the parties that Claimant's injury should include chronic regional pain syndrome [(CRPS)] or reflex sympathetic dystrophy (RSD) of the right lower extremity. While on vacation in June 2008, Claimant was in a motor vehicle accident and sustained an injury to her lower back. Claimant went out of work and has not returned since that date.

*Horan v. Workers' Comp. Appeal Bd. (Phoebe Home)* (Pa. Cmwlth., No. 2158 C.D. 2011, filed Aug. 8, 2012), slip op. at 1-2 (footnote omitted).[1]

Contending that her non-work injury is no longer disabling and that her earning power is again adversely affected by her work-related injury, Claimant filed her current reinstatement petition on August 22, 2012. As the majority notes, following a hearing, the workers' compensation judge (WCJ) found that Claimant was no longer totally disabled from her non-work injury as of December 7, 2012. The WCJ also found, however, that Claimant did not prove that her work-related injury, specifically her CRPS, had worsened, such that she could not perform a modified-duty job, even though there was no evidence that Employer had a modified-duty job available for Claimant. (WCJ Decision at 5, R.R. 14a.) The

---

[1] Claimant was also injured in a second automobile accident, which, according to the WCJ, also contributed to her disability. (WCJ Decision at 8, Reproduced Record (R.R.) 17a.)

WCJ found that because Claimant failed to prove that she could not perform modified duty work, she failed to establish her burden of proving that her work-related injury is again disabling. On appeal, the Board affirmed.

Here, Claimant's benefits were suspended because she returned to work in a modified-duty job without loss of wages. When a claimant is on suspended status because of a modified-duty job, if that job goes away through no fault of the claimant (*e.g.*, plant closing, layoff, etc.), the claimant can seek reinstatement and need not show a change in medical condition. *See Polis v. Workers' Comp. Appeal Bd. (Verizon Pa., Inc.)*, 988 A.2d 807, 812 (Pa. Cmwlth.), *appeal denied*, 997 A.2d 1180 (Pa. 2010). Indeed, under such circumstances, the claimant is entitled to a presumption that her loss of earning power is causally related to the continuing work injury. *Vista Int'l Hotel v. Workmen's Comp. Appeal Bd. (Daniels)*, 742 A.2d 649, 657-58 (Pa. 1999).

To obtain reinstatement, then, Claimant only needed to prove that, *through no fault of her own*, her earning power has once again been adversely affected by her work injury. *See Virgo v. Workers' Comp. Appeal Bd. (Cnty. of Lehigh-Cedarbrook)*, 890 A.2d 13, 17-18 (Pa. Cmwlth. 2005). Employer appears to be arguing that because Claimant could work the modified-duty job prior to the automobile accident and the WCJ found that she was still able to perform that modified-duty job, we must conclude that her disability is the same as it was prior to the auto accident. Because Claimant was able to work the modified-duty job and did not have any "disability" (*i.e.*, loss of earnings) prior to the auto accident, Employer argues that Claimant continues to have no disability for purposes of reinstatement. What Employer fails to address is that Claimant's claim of

disability is based on her recovery from her auto accident *and* the unavailability or loss of her previous modified-duty job.

Here, because Claimant does not have the ability to perform the modified-duty job with Employer because the position is no longer available, her loss of earnings are attributable to her work-related injury. *Saint Luke's Hosp. v. Workers' Comp. Appeal Bd. (Ingle)*, 823 A.2d 277, 282 (Pa. Cmwlth. 2003). Under *Vista*, however, we must also examine whether the circumstances under which Claimant lost her modified-duty job with Employer merit allocation of the consequence of that job loss to Claimant, such that Claimant's reduced earning power (that being her continued work-related injury and the unavailability of her prior light-duty job with Employer) is now due to her own fault. *Id.* (citing *Vista*, 742 A.2d at 658). I would conclude that under these circumstances, Claimant should not bear the consequence of losing her light-duty job. A car accident, unlike a willful misconduct discharge or lack of good faith (*e.g.*, turning down an available modified-duty job), is not a circumstance that constitutes a "fault" separation from employment. I would, therefore, conclude that both the WCJ and Board imposed the wrong legal burden on Claimant in this case and, like the majority, would reverse and remand the matter for reinstatement of benefits.

Respectfully, I believe the analysis should end here. Unlike the majority, I would not examine whether Employer met its burden under *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 532 A.2d 374 (Pa. 1987). As the Supreme Court recognized in *Vista*, an employer *may* fight reinstatement "by establishing the availability of work that [C]laimant is capable of performing." *Pieper v. Ametek-Thermox Instruments Div.*, 584 A.2d 301, 305 n.8 (Pa. 1990). Employer, however, did not assert this defense in response to

Claimant's petition for reinstatement. Indeed, neither of the parties cite *Kachinski* in their briefs. I, therefore, would not rule on the question of whether Employer satisfied its burden under *Kachinski*, as it is not before us. That is not to say, however, that Employer is prevented from pursuing a suspension or modification of benefits based upon *Kachinski* or otherwise following reinstatement.

_____

P. KEVIN BROBSON, Judge